COCKRUM *v*. STATE OF INDIANA.

[No. 31,038. Filed March 5, 1968. Rehearing denied May 13, 1968.]

*Sidney H. Showalter,* of Columbus, for appellant.

*John J. Dillon,* Attorney General, and *Murray West,* Deputy Attorney General, for appellee.

LEWIS, C. J.—This is an appeal from a conviction, by a jury, for the crime of First-Degree Murder. A plea of insanity was entered by the defendant as well as one of not guilty.

The appellant drove a stolen automobile to a service station and compelled the attendant, at gun-point, to fill the car with gasoline. While the attendant filled the car's gasoline tank, appellant told him that he had spent time in prison and that he was going to kill three (3) people before the night was over.

Subsequent to this encounter, appellant went to the decedent's home, secretly entered the house and confronted the decedent and her husband with a shotgun. After some conversation, he shot the husband in the leg, and subsequently, shot the wife in the head, such wound being fatal.

When appellant was arrested in the decedent's home, he stated that he had shot said decedent.

On appeal appellant claims as errors:

1. The Trial Court's refusal of defendant's application for a change of Judge.
2. The admission into evidence, over defendant's objections, of laymen's opinions as to sanity of the defendant.
3. The Trial Court's giving, over objections, of Instructions No. 21 and No. 25.
4. The Trial Court's refusal to give defendant's tendered Instructions Nos. 6, 9 and 11.
5. That the verdict of the jury is contrary to law in that it is not sustained by sufficient evidence.

In examining the first of appellant's alleged errors, the following facts should be considered. The amended indictment was returned on December 19, 1961. On January 2, 1962, the defendant was arraigned and a plea of not guilty was entered. After the cause was set for trial, the defendant filed a plea

of insanity on March 16, 1962. A sanity hearing was held on May 9, 1962, with the result being that the proceedings were ordered stayed by reason of the defendant being mentally incapable of standing trial.

Appellant was held at Norman Beatty Mental Hospital until April 8, 1965, when he was declared capable of standing trial and returned for trial. Counsel was appointed by the Court on May 12, 1965.

On September 14, 1965, a motion to change venue from the county was filed and granted. The cause was assigned for trial on October 1, 1965. Thereafter, on October 8, 1965, appellant filed for a change of venue from the Judge which was denied. It is the denial of this motion which appellant assigns as error.

Supreme Court Rule No. 1-12C (1964), Change of Venue in Criminal Cases, provides, in part, as follows:

"In any criminal action, no change of judge or change of venue from the county shall be granted except within the time herein provided.

An application for a change of judge or change of venue from the county shall be filed within ten (10) days after a plea of not guilty, or if a date less than ten (10) days from the date of said plea, the case is set for trial, the application shall be filed within five (5) days after setting the case for trial."

Appellant maintains that since he was indicted in 1961, before the effective date of Rule 1-12C, *supra,* and was in the hospital during its inception; he cannot be bound by it now and is not precluded from a change of venue from the Judge.

In 1962 the proceedings for the appellant were stayed because the defendant did not have sufficient comprehension to understand the proceedings and to make his defense thereon. Upon his return for trial in 1965, he was declared capable of standing trial and was provided counsel. Rule 1-12C, *supra,* is a rule of procedure. It does not

add to or subtract from appellant's substantive rights, but merely prescribes the manner in which one may effect this right. The Supreme Court, in changing Rules, may supersede statutes. *State ex rel. Blood et al.* v. *Gibson Circuit Court et al.* (1959), 239 Ind. 394, 157 N. E. 2d 475. Therefore, this rule is applicable upon its effective date which in this case was June 1, 1963.

The proceedings prior to the appellant's commitment are not controlling here. The appellant was incapable of standing trial. Upon his return he filed his motion for change of venue from the county which was granted and his cause was assigned for trial. The time for filing a motion for change of venue from the Judge under Supreme Court Rule No. 1-12C (1964) had expired, but appellant had not lost his complete right to a change of venue from the Judge and should have filed under the following provision:

> "Provided, however, that if the applicant first obtains knowledge of the cause for change of venue from the judge or from the county after the time above limited, he may file the application, which shall be verified by the party himself specifically alleging when the cause was first discovered, how it was discovered, the facts showing the cause for a change, and why such cause could not have been discovered before by the exercise of due diligence. Any opposing party shall have the right to file counter-affidavits on such issue within ten (10) days, and the ruling of the court may be reviewed only for abuse of discretion. All pleadings, papers and affidavits filed at any hearing held pursuant to this rule shall become a part of the record without further action upon the part of either party."

However, appellant did not meet the requirements of this rule and is deemed to have waived his rights thereunder.

Appellant's second assigned error refers to the testimony of the sheriff and two (2) of his deputies concerning the sanity of the defendant. Appellant contends that a proper foundation was not laid for such testimony in that the prior testimony of each witness did not qualify them to give such an opinion.

In substance, all three (3) witnesses testified as to appellant's behavior subsequent to his arrest, while incarcerated, and to their former experience with other insane persons with whom they have had contact in accordance with their respective duties as law enforcement officers.

> "It is settled law that a non-expert witness must state the facts upon which he bases his opinion. There must be some facts upon which the opinion can rest, or it must not be expressed; what facts are sufficient to justify the formation and expression of an opinion by a non-expert witness, it is by no means easy to declare. It is, however, agreed by the authorities that if the witness shows an acquaintance with the accused, that he has had conversation with him, or that he has had business dealings or social intercourse with him, he may, having stated the facts, express an opinion. . . ." *Goodwin* v. *State,* 96 Ind. 550.

> "Generally speaking, questions calling for the conclusion of a witness are objectionable, Albright v. Hughes (1940), 107 Ind. App. 651, 661, 26 N. E. 2d 576, however, it does not necessarily follow that it is reversible error to permit a witness to answer such questions. A lay witness may express an opinion on numerous subjects if based upon his personal knowledge and the proper factual basis for the opinion has been laid." *Randolph* v. *State* (1954), 234 Ind. 57, 122 N. E. 2d 860.

> "The third specification is that it was error for the court to permit a witness, a state policeman, to testify as to appellant's sanity, for the reason that the witness only saw and talked to the appellant once. This objection goes to the weight and not to the admissibility of the evidence." *Warren* v. *State* (1941), 218 Ind. 378, 33 N. E. 2d 105.

The Trial Court committed no error in allowing this testimony into evidence.

Appellant's third alleged error concerned the Trial Court's giving of the following Instructions over objection:

### "COURT'S INSTRUCTION NO. 21

> Where there is mental capacity sufficient to fully comprehend the nature and consequences of an act, and unimpaired will power strong enough to master an impulse to commit a crime, there is criminal responsibility."

### "COURT'S INSTRUCTION NO. 25

Under our law a person of unsound mind cannot be convicted of any crime, and it does not matter what caused the mental unsoundness. If at the time of the alleged commission of the offense charged he was a person of unsound mind from any cause, he should be acquitted. But although there may be some mental derangement, still if the jury trying said person should find that such person at such time had mental capacity sufficient to adequately comprehend the nature and consequence of his acts, and a mind sufficient to deliberate and premeditate and to form an intention and purpose to kill, an unimpaired will power sufficient to control an impulse to commit a crime, he is not entitled to an acquittal upon the ground of mental incapacity."

He objects to these Instructions on, basically, two (2) grounds:

(1) That they preclude an acquittal on the basis of the State not maintaining its burden of proof that appellant was sane and responsible for his acts.

(2) That the use of the words ". . . to commit a crime, . . ." in Instructions No. 21 and No. 25, respectively, refers to any crime rather than the crime charged and was misleading to the jury.

It is true that on their face, Instructions No. 21 and No. 25 do not establish the State's burden of proving the defendant sane at the time of the crime charged. However, Instructions No. 19 and No. 24 (as set out herein below) expressly define the State's burden in this area.

### "COURT'S INSTRUCTION NO. 19

In this case the defendant has entered a special plea of insanity and this plea casts upon the State the burden of proving beyond a reasonable doubt that the defendant could resist or control his impulse to kill the deceased, if you find that he did so kill the deceased; and the State has the burden of proving beyond a reasonable doubt that defendant had sufficient mental power to know that such act was wrong and that he could comprehend the nature and consequence of his act."

## "COURT'S INSTRUCTION NO. 24

Without a criminal intent there is no crime under this indictment as charged, and without mental capacity for it there can be no criminal intent. The defendant's sanity or mental capacity to form the intent to kill is in issue under this indictment and is an essential element of the offense with which he is charged. This element the State is bound to prove beyond a reasonable doubt, and not merely by a preponderance of the evidence. The evidence of defendant's sanity at the time of the commission of this offense need not predominate in weight over that going to show his sanity. And if there is a reasonable doubt in your mind of his sanity at the time of the commission of this offense, you should not convict the defendant."

In *Britt* v. *State* (1962), 242 Ind. 548, 180 N. E. 2d 235, this Court said:

". . . The instruction does not attempt to give the jury all the elements of the crime of assault and battery with intent to kill. It is basic that an instruction need not contain all the law on the subject. All instructions must be considered together. Ewbank's Indiana Criminal Law, Symmes Ed., Vol. 1, § 414."

In *Flowers* v. *State* (1956), 236 Ind. 151, 139 N. E. 2d 185, cited by appellant, a similar problem arose as is alleged in objection (2) to the Instructions in question. It is stated therein:

". . . The wording of the instruction is unfortunate in that unimpaired will power was stated as sufficient to control an impulse to commit crime, which could have been understood by the jury as criminal acts in general, instead of limiting the will power to the specific crime charged. . . ."

*Flowers* v. *State, supra,* was reversed by this Court. However, upon examination it is apparent that it was not reversed on the above grounds.

In *Miller* v. *State of Indiana* (1944), 223 Ind. 50, 58 N. E. 2d 114, the following statement is made:

". . . The purpose of instructions is to inform the jury of the law applicable to the facts in such a manner that the jurors will not be misled, and that they may clearly comprehend and understand the case and arrive at a just, fair, and correct verdict. . . ."

The test for erroneous instructions to be extracted from *Miller* v. *State, supra,* is one of misleading the jury. Instructions No. 19, No. 21 and No. 24 all contain language to the effect "of the offense charged".

In construing the instructions together as warranted by *Britt* v. *State, supra,* it is our conclusion that the jury would not be misled by these phrases, and the appellant was not harmed thereby.

Appellant's fourth alleged error concerns the Court's refusal to use defendant's tendered Instructions No. 6, No. 9 and No. 11.

### *"DEFENDANT'S INSTRUCTION NO. 6*

While the state is not required to prove a motive on the part of the defendant in order to convict him and you may be justified in finding a motive from the commission of the crime itself, if the commission of the crime by the defendant is proved beyond a reasonable doubt, yet, in any case where the sanity of the defendant is an issue, the failure of the evidence to establish a motive upon the part of the accused to commit the crime with which he is charged may be sufficient to create a reasonable doubt as to his sanity."

### *"DEFENDANT'S INSTRUCTION NO. 9*

The Court has permitted the introduction in evidence herein of testimony relative to the commitment of the defendant herein, Jack T. Cockrum, to a state institution for the care of the criminally insane in this State, and testimony on behalf of the State relative to the commission of crime and other degrading conduct on the part of the defendant herein, all prior to the acts charged in the indictment herein, which testimony extends in part to a time remote from the alleged killing and murder in this case. You should understand, gentlemen of the jury, that it is proper for you to consider this class of evidence for the purpose of determin-

ing the question of the sanity or insanity of the defendant herein at the time of the alleged crime involved herein, but that it is not proper for you to consider it for any other purpose whatsoever."

## "DEFENDANT'S INSTRUCTION NO. 11

The true test of insanity in determining responsibility for the commission of crime may be stated thus: If a defendant has mental capacity sufficient to adequately comprehend the nature and consequences of his act, and unimpaired will power fully sufficient to control an impulse to commit crime, he is, under the law of Indiana, responsible for his acts, and he is not entitled to an acquittal upon the ground of mental incapacity or insanity. Otherwise, he is not responsible, and is entitled to acquittal on such ground.

And so, in this case, in the event that you find from the evidence beyond a reasonable doubt that the defendant herein, Jack T. Cockrum, did in fact commit the act charged in the indictment herein, you will be required to consider the mental capacity of the defendant at said time in order to determine the existence or non-existence of responsibility therefor. And in such consideration if you find beyond a reasonable doubt that the defendant, at the time of such act, had mental capacity sufficient to adequately comprehend the nature and consequences of his act, and unimpaired will power fully sufficient to control his impulse to commit such crime, then you should hold the defendant responsible for such act; but, on the other hand, if, after such consideration of the evidence, you have a reasonable doubt that the defendant, at the time of such act, had the mental capacity sufficient to adequately comprehend the reasonable doubt that his will power was unimpaired and fully sufficient to control his impulse to commit such crime, then you should hold the defendant not responsible for such act by reason of insanity."

Instruction No. 6, as tendered, attempts to set forth that there was no motive proven by the State for the commission of the crime. Therefore, the lack of a motive is evidence of insanity. There is presented in the testimony some evidence of a motive, that being defendant's statements pertaining to the decedent "sending him to jail." Notwithstanding this, however, the case relied upon by appellant, *Goodwin* v. *State*

(1884), 96 Ind. 550, for this "lack of motive theory" contains the following statement:

". . . It would have been proper for the court to instruct the jury that evidence of the absence of motive was entitled to consideration upon the question of mental capacity, but we are inclined to the opinion that it would not have been proper to characterize it as important evidence. . . ."

We conclude that this Instruction is under the category of those which point out evidence "tending to show" a fact as stated in *White* v. *State* (1899), 153 Ind. 689, 54 N. E. 763:

"The statement that there has been evidence 'tending to show' a particular fact, is equivalent to a statement that evidence has been offered relating to such fact. The force and effect of the evidence is in no sense suggested by the term. How slightly or how strongly the evidence tended, etc., or whether it tended at all to effect a conclusion, is expressly left to the jury in these words of the instruction complained of: 'It is for you to determine the weight you will give to such identification, if any such was made. . . .'"

To summarize, Instruction No. 6 as offered by the defendant was designed to emphasize evidence of "little importance" to the jury. However, the Instruction contained no direction to the jury that they were to determine the weight of it; but, to the contrary, it stated that such evidence ". . . may be sufficient to create a reasonable doubt as to his sanity", thereby overemphasizing the importance of it and misleading the jury. The Instruction was properly denied.

Defendant's tendered Instruction No. 9 attempts to instruct the jury that certain evidence admitted is solely for the purpose of determining the sanity of the defendant. Under the doctrine as recently stated in *Fulmer* v. *State* (1967), 249 Ind. 261, 230 N. E. 2d 307, this would have been a valid instruction; except, instructions to the jury are not to mislead the jury nor to over-emphasize certain evidence. *Thompson* v. *Town of Fort Branch* (1931), 204 Ind.

152, 178 N. E. 440. Upon careful reading of the Instruction at issue, it appears to be emphasizing that the defendant had been committed to an institution for the *criminally* insane and that the acts all happened at a time *remote* from the alleged killing. Therefore, the Trial Court was justified in refusing this Instruction.

Defendant's tendered Instruction No. 11 is adequately covered in Instruction Nos. 18 through 26 as given by the Trial Court. Therefore, the failure to give this Instruction will not constitute reversible error. *Hinds, Executor of Estate of Sickels, Deceased* v. *McNair et al.* (1956), 235 Ind. 34, 129 N. E. 2d 553.

Appellant's last alleged error concerns the sufficiency of the evidence as to defendant's sanity and criminal responsibility. He maintains that the State had the burden of proving beyond a reasonable doubt that the defendant was sane due to the fact that defendant's prior commitment raised a presumption of insanity.

In its endeavor to do this, the State introduced two (2) lay witnesses and a practicing psychiatrist who testified that the defendant was sane at the time of the crime, thereby rendering him criminally responsible.

On appeal from a criminal conviction where the sufficiency of the evidence is challenged, the Supreme Court cannot weigh the evidence but will consider only the evidence most favorable to the State, and the reasonable inferences that may be drawn therefrom to determine whether the jury was warranted in returning a verdict of guilty. *Gilmore* v. *State* (1951), 229 Ind. 359, 98 N. E. 2d 677; *Flowers* v. *State, supra.*

We find that the jury was so warranted. There are no valid errors raised and we affirm the conviction.

Arterburn, Hunter and Mote, JJ. concur. Jackson, J., dissents.

NOTE.—Reported in 234 N. E. 2d 479.